IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EUGHINIA JONES | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DONALD T. VAUGHN, et al. | : | No. 02-3540 |

**REPORT AND RECOMMENDATION**

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE                              April     , 2003

This is a <u>pro se</u> petition for writ of habeas corpus filed pursuant to 28 U.S.C. §

2254 by Eughinia Jones ("Jones"), an individual currently incarcerated in the Graterford

State Correctional Institution.  For the reasons that follow, I recommend that the petition

be denied.

**FACTS AND PROCEDURAL HISTORY:**

On July 8, 1975, Maurice Wilson was robbed and murdered in the North

Philadelphia apartment of Esther Jones.[1]  Witnesses to the murder were Esther Jones; her

roommate, Earline Gates; and Gates' daughter.  Gates testified at trial that she was

awakened on July 8, 1975, at about 9 o'clock in the morning by Eughinia Jones, who was

standing over her with a gun.  (N.T. 10/5/81, 123).  Eughinia Jones walked Gates into the

living room at gunpoint.  Maurice Wilson, Esther Jones, Mark Garrick, and Gates'

daughter were in the living room.  (N.T. 10/5/81, 125).

Gates was seated on the couch with her two- (2-) year old daughter, next to Esther

---

[1]Eughinia Jones is not related to Esther Jones.  <u>Commonwealth v. Jones</u>, Nos. 12-156/1981, at 5 (Phila. Ct. Comm. Pl., July 14, 1983), attached to Resp't Answer as Ex. "A."

Jones and Andre Wright. Maurice Wilson was lying on the floor while Eughinia Jones stood over Wilson holding a gun to his head. Andre Wright pointed his gun at Gates' two- (2-) year old daughter. (N.T. 10/5/81, 126-129).

On cross-examination, Gates testified that the three (3) defendants demanded "money, drugs and jewelry" from Wilson, who failed to respond to the demands. (N.T. 10/6/81, 11). After about fifteen (15) minutes, Garrick, who also had a gun, and Eughinia Jones took Wilson and walked him down the hall into the kitchen. Gates heard loud voices ordering Wilson to jump out of the window. After Wilson refused, Gates heard four (4) or five (5) shots. (N.T. 10/5/81, 137, 204). She then heard Eughinia Jones say, "I shot myself in the hand!" Gates testified that she heard footsteps running down the stairs. Gates and Esther Jones went into the kitchen where they found Wilson lying on the floor. Esther Jones then ran downstairs to call her mother. Gates took her daughter and left the premises. (N.T. 10/5/81, 137, 139, 157).

Eughinia Jones, Andre Wright and Mark Garrick were arrested and charged with the crime. However, when it became apparent that key Commonwealth witnesses were unavailable, the Commonwealth filed a motion to withdraw prosecution in August 1975. The Commonwealth's motion was granted without prejudice. In December 1980, a grand jury returned murder indictments upon Jones and his accomplices. The co-defendants were then rearrested and charged again with the murder of Maurice Wilson.

On October 24, 1981, a jury sitting before the Honorable John A. Geisz, Court of

Common Pleas of Philadelphia County, convicted Jones of second degree murder, robbery, criminal conspiracy, and possession of an instrument of crime. After post-verdict motions were denied, Jones was sentenced to life imprisonment for murder, five (5) to ten (10) years' imprisonment for robbery, (5) to ten (10) years' imprisonment for conspiracy, and two and one-half (2½) to five (5) years' imprisonment for the weapons offense. The sentences were to run concurrently.

On May 9, 1983, Jones filed a direct appeal in the Pennsylvania Superior Court claiming:

> (1) the selection of "death qualified" jury created a prosecution-prone jury, thereby denying Jones a fair trial;
>
> (2) counsel was ineffective for failing to object to the Commonwealth's application for a nolle prosequi in 1975 and for failing to file a pretrial motion to dismiss under Rule 1100;[2]
>
> (3) the trial court erred in denying Jones' motion to suppress all evidence seized from an accomplice's home;
>
> (4) the comments of the prosecutor during the course of the trial amounted to prosecutorial misconduct; and
>
> (5) the trial court erred in allowing the Commonwealth to introduce into evidence and show the jury a .44 caliber weapon which was never identified as a weapon in the incident at issue.

On July 12, 1985, the Superior Court affirmed the judgment of sentence for murder in the second degree, conspiracy, and possession of an instrument of crime; however, Jones'

---

[2]Although Rule 1100 has since been renumbered to Pa. R. Crim. P. 600, we will refer to it as Rule 1100 for purposes of clarity and consistency.

sentence for robbery was vacated.  Commonwealth v. Jones, 501 A.2d 292 (Pa. Super.

1985) (table); No. 1370 Phila. 1983 (Pa. Super. July 12, 1985) (unpublished

memorandum), attached to Resp't Answer as Ex. "B."  Jones filed a petition for

allowance of appeal in the Pennsylvania Supreme Court, which was denied on September

25, 1986.  Commonwealth v. Jones, 956 EDA 1986; attached to Resp't Answer as Ex.

"C."

On January 19, 1996, Jones filed a pro se petition under Pennsylvania's Post

Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. § 9541, et seq.  After appointed

counsel filed an amended petition, the PCRA court denied relief on May 4, 1998.

Commonwealth v. Jones, Nos. 0152-1056 (Phila. Ct. Com. Pl. May 4, 1998), attached to

Resp't Answer as Ex. "D."

On July 28, 1997, Jones filed an appeal in the Pennsylvania Superior Court.  The

appeal was dismissed without prejudice on July 20, 1998, due to failure to prosecute the

appeal.  On July 7, 1999, Jones filed a petition seeking permission to file an appeal nunc

pro tunc.  The court granted permission, and Jones filed an appeal presenting the

following claims:

> (1) all prior counsel were ineffective for failing to present
> Jones' medical records which would have shown that the
> wound to his hand was from a burn, rather than a gunshot;[3]

_____

[3]As previously noted, the Commonwealth argued at trial that Jones shot himself in the
hand during the murder of Maurice Wilson.  Commonwealth v. Jones, Nos. 12-156/1981, at 6.

4

(2) all prior counsel were ineffective for not presenting the
claim that the trial court erred by permitting the testimony
of a former assistant district attorney; and

(3) all prior counsel were ineffective for failing to present Jones'
claim that the court restricted his ability to cross-examine Esther
Jones about her motive to lie.

The Superior Court affirmed the denial of PCRA relief on October 10, 2000.

Commonwealth v. Jones, 767 A.2d 1109 (Pa. Super. 2000) (table); No. 3397 EDA 1999

(Pa. Super. Oct. 10, 2000) (unpublished memorandum), attached to Resp't Answer as Ex.

"F." Jones filed a petition for allowance of appeal in the Pennsylvania Supreme Court,

which was denied on June 4, 2001.  Commonwealth v. Jones, 781 A.2d 141 (Pa. 2001)

(table).

Jones filed the instant petition for writ of habeas corpus on May 22, 2002,[4]

claiming:

(1) the selection of "death qualified" jury created a prosecution-
prone jury, thereby denying Jones a fair trial;

(2)  the comments of the prosecutor during the course of the trial
amounted to prosecutorial misconduct;

(3) counsel was ineffective for failing to object to the
Commonwealth's application for a nolle prosequi in 1975 and
for failing to file a pretrial motion to dismiss under Rule 1100(f);

---

[4]Generally, a pro se petitioner's habeas petition is deemed filed at the moment he delivers
it to prison authorities for mailing to the district court.  Burns v. Morton, 134 F.3d 109, 113 (3d
Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)).  Jones signed his habeas petition on
May 22, 2002; therefore, we will assume that he presented his petition to prison authorities on
that date.

(4) all prior counsel were ineffective for not presenting the
claim that the trial court erred by permitting the testimony
of a former assistant district attorney;

(5) all prior counsel were ineffective for failing to present Jones'
claim that the court restricted his ability to cross-examine Esther
Jones about her motive to lie; and

(6) all prior counsel were ineffective for failing to present
Jones' medical records which would have shown that the
wound to his hand was from a burn, rather than a gunshot.

Respondents have filed an answer arguing that Jones' claims do not merit federal habeas

relief.

## DISCUSSION:

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") which became

effective on April 24, 1996, amended the standards for reviewing state court judgments in

federal habeas petitions filed under 28 U.S.C. § 2254.  Werts v. Vaughn, 228 F.3d 178,

195 (3d Cir. 2000).  Since Jones filed his habeas petition on May 22, 2002, we are

required to apply the amended standards set forth in the AEDPA to his claims for federal

habeas corpus relief.  Id. (citing Lindh v. Murphy, 521 U.S. 320, 336 (1997)) (presuming

that a federal habeas court is to apply the amended standards set forth in the AEDPA

when a petition is filed after the effective date of the AEDPA).

The AEDPA increases the deference federal courts must give to the factual

findings and legal determinations of the state courts.  Werts at 196 (citing Dickerson v.

Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)).  Pursuant to 28 U.S.C. § 2254(d), as amended by

the AEDPA, a petition for habeas corpus may only be granted if (1) the state court's

adjudication of the claim resulted in a decision contrary to, or involved an unreasonable

application of, "clearly established Federal law, as determined by the Supreme Court of

United States;" or if (2) the adjudication resulted in a decision that was "based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Factual issues determined by a state court

are presumed to be correct and the petitioner bears the burden of rebutting this

presumption by clear and convincing evidence.  Werts, 228 F.3d at 196 (citing 28 U.S.C.

§ 2254(e)(1)).

     The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S.

362 (2000).  In Williams, the Court explained that "[u]nder the 'contrary to' clause, a

federal habeas court may grant the writ if the state court arrives at a conclusion opposite

to that reached by [the Supreme] Court on a question of law or if the state court decides a

case differently than [the Supreme] Court has on a set of materially indistinguishable

facts."  Hameen v. State of Delaware, 212 F.3d 226, 235 (3d Cir. 2000) (citing Williams,

529 U.S. at 389-390).  The Court in Williams further stated that "[u]nder the

'unreasonable application' clause, a federal habeas court may grant the writ if the state

court identifies the correct legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case."  Id.  The

"unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. (citing Williams, 529 U.S. at 388-389). "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 389).

### 1.    Death Qualification of Jury

In his first claim, Jones contends that his Sixth Amendment right to be tried by an impartial jury was violated when the Commonwealth "removed jurors from sitting on the jury who did not believe in the death penalty." See Pet. at 9. The Sixth Amendment provides in part that "the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State." U.S. Const. amend. VI. To the extent that Jones argues that a "death qualified" jury is not impartial or fails to represent a fair cross-section of the community, such a claim must be denied. The United States Supreme Court has held that creation of a death-qualified jury by excluding jurors with moral scruples against the death penalty does not violate the Constitution's fair cross-section requirement or a defendant's right to an impartial jury. See, e.g., Lockhart v. McCree, 476 U.S. 162, 174, 177-78 (1986) (rejecting the view that an "impermissibly partial jury results" when the

State "'tips the scales' by excluding prospective jurors with a particular viewpoint").  The

Supreme Court has also ruled that in joint trials, part of which involved a capital crime,

non-capital defendants may be tried before a death-qualified jury together with capital

defendants.  Buchanan v. Kentucky, 483 U.S. 402, 414-20 (1987) (rejecting petitioner's

argument that a "death-qualified" jury is conviction prone and reiterating that "the

Constitution presupposes that a jury selected from a fair cross section of the community is

impartial, regardless of the mix of individual viewpoints actually represented on the jury,

so long as the jurors can conscientiously and properly carry out their sworn duty to apply

the law to the facts of the particular case") (citation omitted).  Because the Supreme

Court's holding in Buchanan supports the conclusion that the Sixth Amendment would

not prohibit the death qualification of a jury for a non-capital defendant who was tried

alone, Jones' allegation that a death qualified jury violates his right to an impartial jury

must be denied.  See, generally, United States v. Tidwell, 1995 WL 764077 at *8 (E.D.

Pa. Dec. 22, 1995) (citing Buchanan, 483 U.S. 402 (1987), and McCree, 476 U.S. 162

(1986)) (the Supreme Court has squarely rejected the argument that the death penalty

should not be sought because the jury selection process required in such a case would

result in a jury more likely to view the charges with gravity and a "death qualified" jury).

Any claim that Jones would make regarding the constitutionality of striking jurors

who refused to follow the court's instructions on the death penalty must similarly be

denied.  The state court found that "[i]t is clear from the record that no juror was excused

9

for cause unless he or she indicated that a vote for the death penalty, even in a proper case, would do severe violence to fixed moral or religious beliefs." Commonwealth v. Jones, Nos. 12-156/1981, at 47 (citing Witherspoon v. Illinois, 391 U.S. 510 (1968)). "The Supreme Court has never retreated from its essential position in Witherspoon v. Illinois that '[a] man who opposes the death penalty, no less than one who favors it, can make the discretionary judgment entrusted to him by the State and can thus obey the oath he takes as a juror.'" Lesko v. Lehman, 925 F.2d 1527, 1547-48 (3d Cir. 1991) (citing Witherspoon, 391 U.S. 510, 519 (1968)). "Despite certain language in Witherspoon that might have implied a broader standard, however, the Court has held that a trial court may properly excuse a juror for cause if that individual's opposition to capital punishment 'would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Id. (citing Wainwright v. Witt, 469 U.S. 412, 421 (1985)) (citation omitted); see also Lockhart, 476 U.S. at 176 ("the group of 'Witherspoon-excludables' includes only those who cannot and will not conscientiously obey the law with respect to one of the issues in a capital case"). Accordingly, Jones' constitutional rights were not violated when the trial court allowed the Commonwealth to strike for cause those jurors who expressed reservations about their ability to perform their duties as a juror in accordance with the trial court's instructions. Therefore, we conclude that the Pennsylvania state court's rejection of this claim is not contrary to clearly established federal law, and this claim fails on the merits.

10

2.    **Prosecutorial Misconduct**

In his second claim, Jones alleges that the prosecutor made several improper comments which denied him the opportunity of a fair trial.  The Supreme Court has held that federal habeas relief may be granted when the "prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'"  Werts, 228 F.3d at 197 (citing Greer v. Miller, 483 U.S. 756, 765 (1987)) (citation omitted).  The Court further opined that for due process to have been offended, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'"  Id. at 197-98 (citing Greer, 483 U.S. at 765) (citations omitted).  See also Ramseur v. Beyer, 983 F.2d 1215, 1239 (3d Cir. 1992) (federal habeas review of a prosecutor's conduct in a state trial is limited to determining whether the prosecutor's conduct "'so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process'") (quoting Greer, 483 U.S. at 765).  This determination will, at times, require habeas courts to draw a fine line -- distinguishing between ordinary trial error on one hand, and "'that sort of egregious misconduct which amounts to a denial of constitutional due process'" on the other hand.  Id. at 198 (citing Ramseur, 983 F.2d at 1239) (citation omitted).

In evaluating whether the remarks of the prosecutor rise to the level of a constitutional violation, a federal habeas court is required to examine those remarks in the context of the whole trial.  Werts, 228 F.3d at 198 (citing Ramseur, 983 F.2d at 1239 and

Greer, 483 U.S. at 766).  The remarks must be sufficiently prejudicial in the context of the

entire trial to violate a petitioner's due process rights.  Id. (citing Greer, 483 U.S. at 766

and Donnelly v. DeChristoforo, 416 U.S. 637, 639 (1974)).

Jones first alleges that the prosecutor committed misconduct when he stated during

opening remarks, "[t]here is no question that it was first degree murder in this case, and

that's easy."  (N.T. 10/5/81, at 27).  Upon review of this comment, the state court pointed

out that there was no evidence that the prosecutor's statement was made in bad faith, but

rather "referred to a verdict the Commonwealth pursued with strong advocacy and

reasonable inferences drawn from the facts."  Commonwealth v. Jones, Nos. 12-

156/1981, at 31.  In any event, the state court concluded that this claim was meritless

because Jones could not prove that he was unfairly prejudiced by the remark in light of

the fact that he was only convicted of second degree murder.  Id.  We agree.  The fact that

the prosecutor's opening argument referenced a first degree murder conviction, whereas

Jones was convicted of second degree murder, indicates that the prosecutor's opening

comments did not "'so infec[t] the trial with unfairness as to make the resulting

conviction a denial of due process.'"  Werts, 228 F.3d at 197.  Accordingly, this claim of

prosecutorial misconduct must be denied.

In his second allegation of prosecutorial misconduct, Jones alleges that the

prosecutor improperly referenced the "wolfpack" case in his closing address, thereby

12

arousing the passions of the jury.[5] (N.T. 10/22/82, 17). In dismissing this claim, the state court found that the prosecutor had used the "wolfpack" case as an example of second degree murder and that the prosecutor "in no way" related the case to Jones and his co-defendants. Commonwealth v. Jones, Nos. 12-156/1981, at 35. The state court also concluded that the prosecutor was merely attempting to clarify applicable principles of law, as permitted by state law. Id. at 35-36 (citing Commonwealth v. Crawford, 427 A.2d 166 (Pa. Super. 1981)). Furthermore, the state court noted that the trial court had further explained these principles in its charge to the jury. Id. at 36.

As an initial matter, we note that the state courts' characterization of the prosecutor's "wolfpack" reference in his closing argument is a factual finding entitled to deference under 28 U.S.C. § 2254(e)(1). Moreover, we find that, when viewed in proper context, the state court correctly determined that the prosecutor's statement did not violate Jones' due process right by inflaming the passions of the jury. As the state court pointed out, the reference was made in an attempt to explain the felony murder doctrine and the prosecutor did not relate the "wolfpack" case to any of the defendants. Because the comment at issue is simply not sufficiently prejudicial in the context of the entire trial to violate Jones' due process rights, we find this argument is meritless. Id. (citing Greer, 483 U.S. at 766 and Donnelly v. DeChristoforo, 416 U.S. 637, 639 (1974)).

---

[5]The "wolfpack" case is a felony murder case that occurred in Philadelphia prior to the instant trial. Commonwealth v. Jones, Nos. 12-156/1981, at 35.

In his third claim of prosecutorial misconduct, Jones claims that the prosecutor improperly characterized the defense as a "smokescreen" and told the jury that the defense was "blowing smoke."  Upon review of this claim, the state court concluded that the prosecutor's statements did not violate Jones' due process rights because the statements "were the product of permissive rebuttal advocacy," responding to equally strong comments from the defense regarding the quality of the prosecution's case. Commonwealth v. Jones, Nos. 12-156/1981, at 36 (citing N.T. 10/22/81, 47, 84).

As previously noted, we are required to examine the prosecutor's remarks in the context of the whole trial, for only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial.  Werts, 228 F.3d at 198 (citations omitted).  In the instant case, both the prosecution and defense counsel engaged in equally heated argument.  Given the nature of the argument presented, we do not believe that the prosecutor's characterization of Jones' defense as a "smokescreen" undermined the jury's ability to view the evidence independently and fairly.  See United States v. Young, 470 U.S. 1, 18 (1985) (finding that the jury was not influenced to stray from its duty to be fair and unbiased given the context of the prosecutor's remarks and the broadside attack from defense counsel).  As such, Jones' due process rights were not violated by the prosecutor's remarks.

In his final claim of prosecutorial misconduct, Jones contends that the prosecutor implied that defense counsel was a "con" and improperly expressed his personal opinion

of witness Earline Gates.  During trial, defense counsel for Jones' co-defendants attempted to impeach the credibility of Commonwealth witnesses Earline Gates by calling her testimony "nonsense" and stating that she was a "puppet" who testified as directed to by others.  (N.T. 10/22/81, Vol. I, 46-66).  Defense counsel also told the jury that Gates was "a con artist.  An absolute con.  A complete con."  (N.T. 10/22/81, 59, 64, 70).  Jones' counsel also asserted that, contrary to her claims, Gates was not afraid of Jones and his co-defendants.  (N.T. 10/22/81, Vol. I, 136).  In reply, the prosecutor reviewed Gates' testimony, reminded the jurors that defense counsel had argued that Gates was attempting to "con" them and asked the jury to decide for themselves "who is trying to con you in this case."  (N.T. 10/22/81, Vol. II, 33).  The prosecutor also countered defense counsel's questioning of Gates' credibility by outlining the circumstances surrounding the incident at issue and noting the fear that Gates had felt after the defendants had threatened her.[6]  (N.T. 10/22/81, Vol. II, 42).

"While the prosecutor and defense counsel share a responsibility to confine arguments to the jury within proper limits, occasionally, during the heat of argument, counsel make remarks that are not supported by the testimony and which are or may be prejudicial to the defendant."  Werts, 228 F.3d at 199 (citing Young, 470 U.S. at 8, 10).

---

[6]Specifically, the prosecutor stated:
> [Gates] is scared to death of these men.  Why is she scared to death of these men?  Well, if somebody put a gun in your baby's face, would that scare you? If you saw somebody putting a gun to [the victim's] head and pulling back the hammer and clicking it, would that scare you?

(N.T. 10/22/81, Vol. II, 42).

In the instant case, Earline Gates' credibility was hotly contested.  After defense counsel attempted to discredit Gates, the prosecutor was entitled to rebut that argument.  Upon review of the prosecutor's statements in context, we find that the prosecutor's comments were invited by the defense counsel's argument and "went no further than required to 'right the scale.'"  Werts, 228 F.3d at 200.  Consequently, it cannot be said that the prosecutor's comments were improper or that they rendered Jones' trial fundamentally unfair.

In reviewing Jones' claim as whole, the Superior Court noted that the trial in this case "was over two [2] weeks long and the record contains thousands of pages of testimony."  Commonwealth v. Jones, No. 1370 Phila. 1983, at 7.  The court concluded that Jones' "rights to a fair and impartial jury were [not] so impaired by the prosecutor's comments that a false verdict was rendered."  Id.  We agree.  Considering the challenged remarks in trial context, this court does not find that the prosecutor's statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly, 416 U.S. at 643.  In light thereof, we conclude that the state court's determination of this issue was neither contrary to, nor an unreasonable application of, the prevailing law.  See 28 U.S.C. § 2254(d).

3.    **Ineffective Assistance of Counsel for Failure to Object to Commonwealth's Motion to Withdraw Prosecution and Failure to File a Pre-Trial Motion to Dismiss under Pa. R. Crim. Pro. No. 1100**

Jones' claims of ineffective assistance of counsel are governed by Strickland v.

16

Washington, 466 U.S. 668 (1984). In Strickland, the United States Supreme Court set

forth the standard for a petitioner seeking habeas relief on the grounds of ineffective

assistance of counsel:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. Second,
> the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Id. at 687.

Because "it is all too easy for a court, examining counsel's defense after it has

proved unsuccessful, to conclude that a particular act or omission of counsel was

unreasonable," a court must be "highly deferential" to counsel's performance and "indulge

a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." Strickland, 466 U.S. at 689. In determining prejudice, "the

question is whether there is a reasonable probability that, absent the errors, the factfinder

would have had a reasonable doubt respecting guilt." Id. at 695. "[A] court need not

determine whether counsel's performance was deficient before examining the prejudice

suffered by the defendant as a result of the alleged deficiencies." Id. at 697. "If it is easier

to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that

course should be followed." Id.

"It is past question that the rule set forth in Strickland qualifies as 'clearly

17

established Federal law, as determined by the Supreme Court of the United States.'"

<u>Williams</u>, 529 U.S. at 391. Thus, Jones is entitled to relief if the Pennsylvania courts'

decision rejecting his claims of ineffective assistance of counsel was either "contrary to, or

involved an unreasonable application of," that established law.[7] <u>Id.</u>

Jones claims that, due to ineffective assistance of counsel, his trial was held in

violation of Rule 1100 of the Pennsylvania Rules of Criminal Procedure and the speedy

trial requirement of the Sixth Amendment. More specifically, Jones alleges that the

Commonwealth improperly delayed its prosecution of his case and that counsel was

ineffective for failing to object to the Commonwealth's application to withdraw

prosecution in 1975. Jones also argues that counsel was ineffective for failing to move for

a dismissal in 1985 pursuant to Pennsylvania's speedy trial rule, Rule 1100.[8]

Pennsylvania Rule 1100 provides in relevant part that a "trial in a court case in

which a written complaint is filed against the defendant, where the defendant is

incarcerated, shall commence no later than one hundred eighty (180) days from the date on

---

[7]Upon analyzing the law set forth in the state court opinions, we find that the state court did not apply a rule that contradicts the Supreme Court's holding in <u>Strickland</u>. <u>See</u> <u>Werts</u>, 228 F.3d at 204. The Pennsylvania Supreme Court has held that the Pennsylvania standard judging ineffectiveness claims is identical to the ineffectiveness standard enunciated by the United States Supreme Court in <u>Strickland</u>. <u>Werts</u>, 228 F.3d at 203 (citing <u>Commonwealth v. Pierce</u>, 527 A.2d 973, 976-77 (Pa. 1987)).

[8]Although the particular terms of Pennsylvania speedy trial rule, Rule 1100, "are neither directly granted nor required by the Constitution," <u>Wells v. Petsock</u>, 941 F.2d 253 (3d Cir. 1991), <u>cert. denied</u>, 505 U.S. 1223 (1992), Jones' underlying state law claim is properly analyzed pursuant to his federal constitutional claim that counsel rendered ineffective assistance.

which the complaint is filed."[9]  In analyzing Jones' claim pursuant to this Rule, the state

court summarized the relevant procedural history as follows:

> Complaints were originally filed against defendants on July 8, 1975[,]
> charging them with murder, robbery and conspiracy.  At the
> preliminary hearing on August 2[7], 1975[,] the Commonwealth's
> motion to discharge the Complaints was granted without prejudice
> because of the unavailability of Esther Jones, a witness who was vital
> to the prosecution. . . Defendants were re-arrested during January
> 1981 pursuant to Complaints filed January 8, 1981 . . . The
> Commonwealth obtained a period of extension under Rule 1100 for
> Eughenia Jones on July 1, 1981.  [Jones'] trial began on October 5,
> 1981.

Commonwealth v. Jones, Nos. 12-156/1981, at 17.

Jones has presented two (2) intertwined claims of ineffective assistance of counsel.

In assessing his claims, the relevant issue becomes whether the 180 day period of Rule

1100 and the speedy trial requirement of the Sixth Amendment runs from when the first

Complaint was filed and dismissed or when the second Complaint was filed.  The state

court's analysis involved a two (2) step approach: (1) whether the first Complaint was

properly dismissed; and (2) whether the record indicates an attempt by the Commonwealth

to circumvent Rule 1100.  Commonwealth v. Jones, Nos. 12-156/1981, at 18 (citing

Commonwealth v. Navarro, 419 A.2d 141 (Pa. Super. 1980)).

---

[9]At the time of Jones' trial, periods of extension properly obtained by the Commonwealth
were excludable in computing time for speedy trial. Commonwealth v. Jones, Nos. 12-156/1981,
at 17; see Pa. R. Crim. Proc. 1100(c)(3) (an extension of the deadline for commencement of trial
on motion of the Commonwealth "shall be granted only upon findings based upon a record
showing that trial cannot be commenced within the prescribed period despite due diligence by the
Commonwealth").

In assessing this question, the state court initially determined that the first Complaint was properly dismissed under state law because two (2) crucial eyewitnesses, Esther Jones and Earline Gates, were unavailable.  Commonwealth v. Jones, Nos. 12-156/1981, at 18.  In support thereof, the state court noted that repeated attempts to locate eyewitness Esther Jones had proven fruitless and Earline Gates denied knowing the identity of the murderers.[10]  Id.  The state courts' determination that the key Commonwealth witnesses were unavailable is a factual finding entitled to deference under 28 U.S.C. § 2254(e)(1).  Therefore, in the absence of clear and convincing evidence to the contrary, we will assume that the underlying reason for dismissing the first Complaint was proper.  Id.  Because the first Complaint was found to have been appropriately dismissed under state law, we find that Jones cannot establish that he was prejudiced by counsel's failure to object to the Commonwealth's motion to withdraw prosecution.  Accordingly, this aspect of Jones' claim must be denied.

In assessing the second prong of its analysis, the state court determined that the record did not indicate any attempt by the Commonwealth to circumvent Rule 1100.  Commonwealth v. Jones, Nos. 12-156/1981, at 18.  The court noted:

---

[10]The state court pointed out that Gates did not tell police the truth about the incident until January 28, 1981, when she testified in front of the grand jury and identified the defendants as the killers.  Commonwealth v. Jones, Nos. 12-156/1981, at 18.  According to Respondents, both women later testified that they refused to cooperate with the Commonwealth because the defendants had threatened to kill them, as well as Gates' baby, if they talked to the police or testified at trial.

> [T]he prosecution could not successfully try [Jones] at the time [the]
> Complaints were withdrawn because Esther Jones, an eyewitness to the
> incident, was not available to testify at the preliminary hearing.  The
> Commonwealth did not discover Jones for the purpose of [Jones'] trial until
> 1980 when she was served with a subpoena to appear before the Grand Jury.
> The fact that Jones was in police custody and prosecuted for an unrelated
> crime at least two [2] years before [Jones'] trial is irrelevant.  No bench
> warrant was issued for Esther Jones when she failed to appear at the
> preliminary hearing on August 2[7], 1975[,] and law enforcement officials
> had no way of connecting her with this case.  Therefore, subsequent
> prosecution was justifiably delayed by the Commonwealth in order to
> successfully try the defendants.

Id. at 19-20.  In light thereof, the state court held that "the run time for Rule 1100 purposes

commenced on January 8, 1981, the filing date of the second set of Complaints."  Id. at 20.

Because only 173 days had elapsed, the state court found that Jones' trial was not held in

violation of Rule 1100 and the right to a speedy trial.  Id.  As a result, the state court

determined that trial counsel could not be found ineffective for failing to move for

dismissal pursuant to Rule 1100.  Commonwealth v. Jones, No. 1370 Phila. 1983, at 4.

    We do not find that the state court's disposition of this claim is contrary to, or an

unreasonable application, of Strickland.  Pursuant to the state courts' assessment of the

facts, Jones' first Complaint was properly dismissed due to the Commonwealth's inability

to proceed, rather than any improper motive.  As a result, Rule 1100 began to run when the

second Complaint was filed.  Because these calculations render Jones' trial timely, he

cannot establish that he was prejudiced by counsel's failure to move to dismiss the charges

against him for violation of Rule 1100.  Commonwealth v. Jones, No. 1370 Phila. 1983, at

4.  Accordingly, this claim must be denied.

**4.**    **Ineffective Assistance of Counsel for Failing to Present the Claim that the Trial court Erred by Permitting the Testimony of a Former Assistant District Attorney**

In his fourth claim, Jones alleges that appellate counsel was ineffective for failing to argue that the trial court erred by permitting the testimony of Assistant District Attorney Joseph Murray.  In support thereof, Jones alleges that this testimony created a conflict of interest and that Murray improperly vouched for the credibility of a Commonwealth witness.

During cross-examination of Earline Gates, defense counsel attempted to prove that Gates had fabricated her grand jury testimony because the police and the District Attorney's Office had threatened her with jail time if she did not implicate the defendants. Gates denied that she was coerced by the police or the District Attorney's Office.  She claimed that the reason she was afraid when she testified before the grand jury was because her subpoena had warned that, if she failed to cooperate, she could be sentenced to up to twenty (20) years of imprisonment.  Defense counsel, however, confronted Gates with a copy of her subpoena, which did not contain any warnings about a possible jail sentence.  Upon redirect, Gates stated that the judge who had presided over the grand jury proceedings informed her that she could go to jail for six (6) months to twenty (20) years if she lied or did not appear as a witness.  Commonwealth v. Jones, Nos. 12-156/1981, at 7-8.  She noted that she thought she had read this information on her subpoena.  Id.

In response to this line of questioning, the prosecutor called Assistant District

Attorney Joseph Murray, who was the prosecutor in charge of the grand jury proceedings.

Murray testified that, prior to testifying before the grand jury, the presiding judge had

warned Gates that if she lied to the grand jury she would be committing perjury and could

face up twenty (20) years of imprisonment.

In dismissing this claim, the state court first determined that Murray's testimony

had not created a conflict of interest.  Commonwealth v. Jones, No. 3397 EDA 1999, at 4-

6.  In support there of, the court noted that:

> [T]he prosecuting attorney called District Attorney Joseph Murray to rebut
> claims that the police and prosecution had coerced Ms. Gates into
> implicating [Jones].  Murray was the attorney who was in charge of the
> grand jury proceedings.  He was under no supervision or control of the
> prosecuting attorney, and the prosecuting attorney was not his supervisor and
> had no control over him.  Further, the record shows that neither attorney had
> a pecuniary interest in the outcome of the prosecution.

Id. at 5.

We find that the judgment of the Superior Court did not result in an outcome that is

contrary to, or cannot reasonably be justified under Strickland.  As the state court pointed

out, Murray was not under the control or supervision of the prosecuting attorney.

Commonwealth v. Jones, No. 3397 EDA 1999, at 5.  Moreover, Murray did not represent

any of the parties involved in the case, nor did he, or anyone else in the District Attorney's

Office, have any pecuniary interest in the outcome of the case.  Id.  Because Murray's only

interest in the case involved the factual proceedings before the grand jury, Jones fails to

establish that Murray's testimony created a conflict of interest.  Since counsel cannot be

deemed ineffective for failing to raise a meritless claim, we find that the state court correctly concluded that counsel did not render ineffective assistance for failing to present a conflict of interest claim.

In addressing Jones' claim that Murray had vouched for the credibility of Commonwealth witness Earline Gates, the state court concluded that:

> This claim also is meritless.  The record clearly establishes that Murray's testimony was not personal in nature.  He testified that the grand jury indicted Jones and his co-conspirators after they heard all of the evidence that was presented before them, including the testimony of Ms. Gates. Moreover, the record shows that Murray gave facts, not his personal opinion about the truth of Ms. Gates' testimony.

Commonwealth v. Jones, No. 3397 EDA 1999, at 6-7.

We conclude that the state court correctly found that Murray did not improperly vouch for Commonwealth witness Earline Gates' credibility.  As the state court noted, Murray was called as a rebuttal witness in response to defense claims that Gates had been coerced into implicating Jones.  Integral to the defense argument regarding Gates' credibility was Gates' testimony before the grand jury.  Murray testified as to the facts surrounding that testimony, but as the state court pointed out did not give "his personal opinion about the truth of Ms. Gates' testimony."  Commonwealth v. Jones, No. 3397 EDA 1999, at 7.  As such, we find that the state court correctly determined that Murray did not vouch for Gates' credibility.

Because the trial court properly allowed Murray to testify as a rebuttal witness, counsel cannot be deemed ineffective for failing to argue that the trial court erred by

permitting this testimony. As a result, we find that the state court correctly concluded that counsel did not render ineffective assistance.

**5.      Ineffective Assistance of Counsel for Failing to Present the Claim that Jones' Ability to Cross-examine Esther Jones was Restricted**

In his next claim, Jones alleges that all counsel were ineffective for failing argue that the trial court improperly limited the cross-examination of Commonwealth witness Esther Jones. The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witness against him." Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986). Although the main and essential purpose of confrontation is to secure the opportunity of cross-examination, the Confrontation Clause does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id. at 678-79 (citing Delaware v. Fensterer, 474 U.S. 15, 20 (1985)). The trial judge "retain[s] wide latitude" to limit cross examination to avoid harassment, prejudice, confusion of the issues or repetitive or irrelevant testimony. Id. at 679.

The state court rejected this claim based on the following reasoning:

> In this case, the record indicates that each defendant was given a fair and adequate chance to cross-examine Ms. Jones as to her possible motives. Our examination of the record reveals that the cross-examination of Ms. Jones is 185 pages in length, spanning two [2] days of testimony. Moreover, the record shows that Jones tried to connect Ms. Jones with the murder of Maurice Wilson. Also, Jones was able to ask such questions as: whether she knew that Wilson was a drug dealer; the he had stored drugs in her apartment, and that he dated at least two [2] other women while dating her. Further, the record reveals that Jones' trial counsel was permitted to question

25

> Ms. Jones about possible gun ownership and whether she had ever allowed
> Wilson to use her gun, and about whether she and a rival drug dealer had
> arranged Wilson's murder.

Commonwealth v. Jones, No. 3397 EDA 1999, at 7-8.  Because "[i]t is clearly apparent

that Jones had sufficient ability to cross-examine Ms. Jones as to her motive in the case,"

the state court concluded that counsel could not be deemed ineffective for failing to argue

that the trial court had improperly restricted Ms. Jones' cross-examination.

Commonwealth v. Jones, No. 3397 EDA 1999, at 8.

We find that the state court decision is not contrary to, or an unreasonable

application of, Supreme Court precedent.  As the state court noted, the trial court gave

defense counsel wide latitude in cross-examining Jones.  Specifically, the cross-

examination of Jones spanned two (2) days and nearly 200 pages of testimony.  Defense

counsel had ample opportunity to attack Jones' credibility on cross-examination by

questioning her motives, her interest in the case and by illuminating possible criminal

activities.  As a result, we conclude that counsel was not ineffective for failing argue that

the trial court improperly limited Jones' cross-examination.  Accordingly, this claim must

be denied.

**6.    Ineffective Assistance of Counsel for Failing to Present Jones' Medical
         Records**

In his final claim of ineffective assistance of counsel, Jones argues that trial counsel

improperly failed to investigate and produce medical evidence that would have shown that

a burn, not a gunshot, caused the wound on his hand.  The state courts dismissed this claim

finding that Jones had failed to provide any evidence in support of this claim, thereby failing to meet his burden of demonstrating that his medical evidence claim had any arguable merit.  Commonwealth v. Jones, No. 3397 EDA 1999, at 3-4.

Our review of the record, and the Superior Court's decision, leads us to the conclusion that this claim provides no basis for federal habeas relief.  As in the state court, Jones does not provide any support for his allegation that trial counsel erred in failing to present medical evidence.  Nor does he establish that such evidence even exists or that the evidence would have allowed more factual development than was already known.  Strickland, 466 U.S. at 691 (counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations necessary).  The bald assertion that such evidence would have changed the outcome of his trial fails to provide a basis for federal habeas relief.  See, e.g., Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991).  Consequently, Jones has failed to meet his burden to show that he was prejudiced by any alleged error on counsel's part.  Strickland, 467 U.S. at 694.  Because the state court disposition of this claim is neither contrary to, nor an unreasonable application of federal law, the claim must be denied.

Therefore, I make the following:

## **R E C O M M E N D A T I O N**

AND NOW, this      day of April, 2003, IT IS RESPECTFULLY

RECOMMENDED that the petition for writ of habeas corpus be DISMISSED.  There has

been <u>no</u> substantial showing of the denial of a constitutional right requiring the issuance of

a certificate of appealability.

_____

_____PETER B. SCUDERI
                                          UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EUGHINIA JONES                    :        CIVIL ACTION
                                  :
        v.                        :
                                  :
DONALD T. VAUGHN, et al.          :        No. 02-3540

**O R D E R**

AND NOW, this        day of                    , 2003, upon careful and

independent consideration of the petition for a writ of habeas corpus filed pursuant to 28

U.S.C. § 2254, and after review of the Report and Recommendation of United States

Magistrate Judge Peter B. Scuderi, and any objections filed thereto, IT IS ORDERED that:

1.  The Report and Recommendation is APPROVED and ADOPTED.

2.  The petition for a writ for habeas corpus filed pursuant to 28 U.S.C. §

2254 is DENIED.

3.  There is <u>no</u> basis for the issuance of a certificate of appealability.

BY THE COURT:

_____
CLIFFORD SCOTT GREEN, J.